**Mary ARTHUR, Plaintiff,**

v.

**William Bonner ARCHBELL and Myron Odell Barr, Defendants.**

**Civ. No. 457.**

United States District Court

E. D. North Carolina,

Washington Division.

July 27, 1964.

124

Fine, Fine, Legum, Schwan & Fine, Norfolk, Va., L. E. Mercer, Washington, N. C., for plaintiff.

Rodman & Rodman, LeRoy Scott, Washington, N. C., James & Speight, Greenville, N. C., for defendants.

LARKINS, District Judge.

## SUMMARY

By this action plaintiff seeks to recover damages for personal injuries she received in an automobile-truck collision which occurred on January 31, 1960 near Chocowinity, North Carolina.

Plaintiff is a citizen of the Commonwealth of Virginia and both defendants are citizens of North Carolina. Jurisdiction, therefore, is based on diversity of citizenship and the requisite amount in accord with Title 28 U.S.C.A. § 1332.

The cause came on to be heard by the court at the regular term commencing June 15, 1964 at Washington, North Carolina, after the parties had waived their right to a trial by jury. At the conclusion of all the evidence the court found that the joining and concurring negligence of both defendants in the operation of their motor vehicles proximately caused the injuries sustained by the plaintiff.

The court makes the following

## FINDINGS OF FACT

On the afternoon of January 31, 1960, the plaintiff was a gratuitous passenger in a 1960 Ford automobile owned by Bruce-Flournoy Motor Corporation of Norfolk, Virginia, and operated and controlled, at the time, by defendant Archbell. The Archbell automobile collided with a 1956 Ford pick-up truck owned and operated by defendant Barr. As a result of the collision plaintiff was painfully and seriously injured.

The collision occurred on a straight stretch of highway at approximately 4:15 p. m. on N. C. Route No. 33, approximately seven (7) miles east of Chocowinity, North Carolina.

Route No. 33 is a two-lane concrete highway, running east and west. Its

width is twenty-four feet which includes a two-foot asphalt binder or strip on each side, creating an uneven surface or rise. The highway has a maximum speed limit of fifty-five miles per hour under normal conditions.

Immediately prior to the collision the defendant Archbell was proceeding in a westerly direction and defendant Barr was proceeding in an easterly direction, both along Route No. 33.

For a short while before the collision between the two vehicles, and at the time of the collision, a hard and heavy downpour of rain was falling. The highway was wet and slippery. Sheets of water stood on the road.

The defendant Archbell had followed continuously a Cadillac automobile operated by H. C. Potter within a distance of thirty-five (35) to forty (40) feet and over a distance of approximately two miles immediately prior to the collision.

The impact between the automobile operated by the defendant Archbell and the truck operated by the defendant Barr, occurred at or near the center of Route No. 33.

After the collision, defendant Barr's truck came to rest at a point on the south shoulder of the highway headed east. The automobile operated by the defendant Archbell came to a stop in the middle of Route No. 33 with the front end headed west and the left rear wheel resting about two feet across the center line of the highway.

The investigating State Highway patrol officer in his report of the accident stated that in his opinion both vehicles were traveling at an unreasonable and unsafe rate of speed under the existing circumstances. He opined that a rate of speed of forty-five miles per hour was the maximum for safe driving at the time in question. The officer testified that he detected the odor of intoxicating beverage on the breath of defendant Barr following the collision, but he could not state with impunity that Barr's physical or mental abilities were impaired at the time of the accident as a result of said drinking.

Both defendants were driving with their headlights burning and neither applied his brakes prior to the collision. Defendant Archbell testified that immediately after the Barr truck met and passed the Potter Cadillac it was on the high ridge of the two-foot binder. He further testified that when Barr came off the binder he crossed the center line and hit the Archbell automobile.

Barr's testimony is contra. He stated that he was in his lane of traffic and did not cross the center line prior to the accident. He testified that when he saw the Archbell automobile it appeared as if their vehicles were "right on top of each other" and in such proximity that he could not avoid the collision.

Under these facts the court finds that the defendant Archbell operated his automobile in a careless and reckless manner, at a rate of speed imprudent under the conditions then and there existing. Further, he failed to exercise reasonable care in maintaining a proper lookout and failed to exercise reasonable control of his vehicle, and followed too closely behind the Potter vehicle under the existing conditions at that time.

The defendant Barr operated his truck in a careless and reckless manner at a speed imprudent under the conditions then and there existing. Further, he failed to exercise reasonable care to maintain a proper lookout and failed to exercise reasonable control of his vehicle.

The collision between the Archbell automobile and the Barr truck was caused solely through the joint and concurring negligence of the two defendants and such negligence was the proximate cause of the injuries sustained by the plaintiff. The plaintiff, Mary Arthur, was free from contributory negligence.

As a result of the negligence of the defendants the plaintiff was confined to the Beaufort County Hospital, Washington, North Carolina, for ten days. The

injuries which she suffered are as follows:

(1) Double fractures of the 5th metacarpal of the left hand, with a present deformity.

(2) Fractures of 2nd, 4th, 5th and 6th ribs.

(3) Laceration of left knee with scarring.

(4) Multiple bruises and contusions about the ribs, knee, and hand.

(5) Pleural thickening on the left.

(6) Kidney infection.

(7) Contusions in the areas of the back, ribs, left side of chest, kidneys, and left knee.

(8) Irritation of left shoulder blade.

(9) A synotosis, which is that ribs have grown together with a false joint, or a complete healing across two edgings of the rib, so that there would be a bony spicule across it, with nerve root irritation.

In addition, as a result of the accident the plaintiff replaced her upper denture which was broken; became nervous and irritable; suffered a 10 to 15 per cent permanent partial disability of the left upper extremity; suffered a weakness of grip in her left hand which is a permanent partial disability; and, on January 7, 1964 underwent an operation for the removal of glass from her left knee, requiring additional hospitalization for about a week at Leigh Memorial Hospital, Norfolk, Virginia.

The plaintiff suffered considerable pain as a result of the accident and will continue to suffer pain in the future as a result thereof.

At the time of the accident the plaintiff was a forty-seven year old housewife who enjoyed good health. She is now unable to perform her usual duties as a housewife and is unable to assist her husband in the maintenance of their sixteen rental apartments in the city of Norfolk.

## CONCLUSIONS OF LAW

The joint and concurring negligence of the defendants Archbell and Barr caused the collision between the vehicles operated by each of them, and resulted in the injuries sustained by the plaintiff. They both are jointly and severally liable for the injuries received by the plaintiff as a result of the accident.

The plaintiff was not guilty of contributory negligence.

■ Plaintiff is entitled to recover damages for physical pain and suffering, including pain and suffering incident to medical treatment, both past and prospective, directly resulting from the injuries; for permanent injuries or lasting impairment of health, that is for the loss, past and prospective, resulting from partial physical disability thereby occasioned; for the diminution of her ability to perform labor and of her capacity to earn money during her entire life expectancy; and also for medical expenses incurred and probably to be incurred as a result of the injuries. Past medical expenses have amounted to $1864.00.

The foregoing constitutes the court's Findings of Fact and Conclusions of Law as provided by Rule 52 Federal Rules Civil Procedure.

■ Therefore plaintiff is entitled to judgment against both defendants in the sum of $22,500.00, with interest thereon at the rate of six per cent (6%) per annum, together with the costs and disbursements of this action.

Enter judgment for the plaintiff. Rule 58 Federal Rules Civil Procedure. It is so ordered.

It is further ordered that the Clerk serve a copy of this opinion and order upon all counsel of record.